## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

LUIS OMAR ALVAREZ,      )
                        )
      Plaintiff,      )
                        )
v.                   )        CV421-119
                        )
APLM SERVICES, AM      )
INDUSTRIAL SERVICES,    )
and CARLA LITCHFIELD,   )
                        )
      Defendants.    )

## ORDER and REPORT AND RECOMMENDATION

Plaintiff, appearing *pro se*, filed this lawsuit alleging that Defendants committed various unlawful employment actions. Currently pending is Defendants' Motion to Dismiss or in the Alternative for Summary Judgment. Doc. 26. Plaintiff responded in opposition, doc. 32, Defendants replied, doc. 34, and Plaintiff responded to the Reply, doc. 35.

## I.     Background and Procedural History

Plaintiff is a member of Local 709 of the Ironworker's Union ("Local 709"). *See generally*, Doc. 1. Atlantic Parking Lot Maintenance ("APLM") is a union contractor and has entered into collective bargaining

1

agreements with Local 709.  Doc. 26-1 at 2; doc. 31 at 1.[1]  On or about

August 17, 2020, APLM sought Union members for work to be performed

under a contract APLM had with the Savannah Sugar Refinery.  Doc. 26-

1 at 2.  According to Jason Townsend, APLM's owner and manager, the

Savannah Sugar Refinery is owned by the Louis Dreyfus Company,

which requires all persons who work on its premises to complete online

safety training.  Doc. 26-1 at 3.  Plaintiff was referred to APLM by Derrick

Sample, the Apprenticeship Coordinator and President of Local 709.  Doc.

26-4 at 2; doc. 31 at 2.  Sample provided Plaintiff's contact information to

Carla Litchfield, the Operations Manager for APLM, and she

immediately registered him for required training so that he could be

hired and immediately start work.  Doc. 26-1 at 3; doc. 26-2 at 2.

On April 19, Sample sent a message to Litchfield, inquiring about

Plaintiff's start with APLM. Doc. 26-4 at 2, 5.  Litchfield confirmed that

even though he was scheduled to start that day,  Plaintiff had not

---

[1] Plaintiff did not file a Statement of Material Facts.  "[P]ro se litigants are required
to comply with applicable procedural rules."  *Ramchandani v. Sanghrajka*, 2022 WL
16549470, at *1 (11th Cir. Oct. 31, 2022) (citing *Albra v. Advan, Inc.*, 490 F.3d 826,
829 (11th Cir. 2007)).  However, because the Plaintiff is *pro se*, the Court construes
his pleadings liberally and has considered his brief's factual contentions.
Nevertheless, because there are no genuine issues of material fact, Defendants'
Motion should be granted as a matter of law, even considering Plaintiff's factual
contentions.

completed mandatory training and did not start work.  Doc. 26-4 at 5; doc. 31 at 3.  Although the context of this is not clear, Sample also noted that he did not send the referral for Plaintiff until he completed the training.  Doc. 26-2 at 8.  Sample sent an email to Plaintiff the next day, inquiring as to whether Plaintiff still desired the job and asked about the training required.  Doc. 26-4 at 6.  Plaintiff did not respond to the email until August 28, 2020, when he asked, "Is this the same job we were talking about a little while ago?" Doc. 26-4 at 6.  Sample responded, clarifying that the job was for APLM.

On February 24, 2021, APLM made another request for Union members to assist with work to be performed at the Savannah Sugar Refinery.  Doc. 26-3 at 2; doc. 31 at 3.  Again, Plaintiff was referred by the Union.  *Id.*  However, APLM did not accept Plaintiff as a referral.  *Id.* When William "Billy" McMillan, the Business Manager for the Local 709, inquired as to why, he was told by Townsend that Plaintiff had failed to complete training in August 2020 and failed to communicate his declination of the August 2020 job offer, resulting in them considering Plaintiff to be a no-show.  *Id.*  Townsend told McMillan that he did not

3

want to risk Plaintiff being a no-show once again or cause delay.  Doc. 26-3 at 2; doc. 31 at 3-4.

Plaintiff does not refute his failure to train or that he did not show up to the August 2020 referral.   Rather, Plaintiff explains that he complained about the fact that the training in question was unpaid, and then he declined the August 2020 opportunity for that reason.  Doc. 32 at 3.  Thus, in his opinion, he was not required to inform anyone that he would not begin work on August 19, 2020, and, therefore, the punitive action of not allowing him to take the February 2021 job was unfair.  Doc. 32 at 2.  Indeed, Plaintiff complained to his union multiple times.  *See* Doc. 32 at 4.  Plaintiff provided meeting minutes from Local 709's August 2020 meeting, where he complained of not being paid for online training "for CR Meyers."  Doc. 32-1 at 9.  The September 2020 minutes reflect that Plaintiff also asked why his prior complaint regarding APLM, specifically, had not been in the August meeting minutes.  Doc. 32-1 at 12.  Purportedly, it was determined that the discussion about APLM was conducted outside of the regular meeting and was thus omitted from the meeting minutes, but Plaintiff believes the failure to record the discussion was nefarious.  Doc. 32-1 at 12; doc. 32 at 4.  Additionally,

Plaintiff complained to Sample about the failure to pay for training. Doc. 1 at 4. Sample explained that the union could not force the contractors to pay for training. *Id.* In response, Plaintiff says he "opted" for a different company later that week. *Id.* However, Plaintiff does not assert that he ever communicated his declination of the offer or his complaint about the unpaid training to APLM. In fact, Plaintiff asserts that when he attempted to contact APLM, he was directed through the message box, so he hung up without leaving a message. Doc. 1 at 4.

On February 25, 2021, the Local 709 office manager forwarded an email to Plaintiff from Litchfield who requested that Plaintiff's name be added to the "not for rehire list." Doc. 32-1 at 2. Plaintiff filed a complaint with the EEOC soon after and received his right-to-sue letter on April 15, 2021. Doc. 1 at 13. He filed this case five days later asserting the following counts: (1) race-based discrimination (disparate impact), in violation of Title VII of the Civil Rights Act of 1964 as amended ("CRA"); (2) national-origin-based discrimination (hostile work environment) in violation of Title VII of the CRA; (3) color-based discrimination (retaliation) in violation of the CRA; and (4) new hire improper, unlawful, and wrongful denial of employment against the Fair Labor Standard Act,

as amended.  *See* Doc. 1.  The Court construes his Title VII counts as claims for unlawful discrimination, retaliation, and hostile work environment on the basis of race and or color.  Although his FLSA claim repeats his discrimination allegations, a prevalent theme exists within his filings: the issue of not being paid for time spent training.[2]  Thus the Court infers from Plaintiff's allegations that he believes he was unlawfully forced to make a decision: undergo unpaid employer mandated training which, he alleges is not exempt from the FLSA's minimum wage and overtime requirements, or not have a job.

Defendants filed their Motion to Dismiss or in the Alternative for Summary Judgment on May 17, 2022.  Doc. 26.  On that same day, the Court issued a Notice to Plaintiff alerting him to the implications of the Court's review of a Motion for Summary Judgment.  Doc. 29.  Plaintiff responded to the Defendants' Motion on June 3, 2022, primarily attacking the factual allegations contained in Defendants' affidavits which were attached to their Motion.  *See* Doc. 32 (examining "Mr. Townsend's Affidavit," among others and pointing out perceived

---

[2] In this portion of his Complaint, Plaintiff cited 29 C.F.R. § 785.28, an implementing regulation promulgated by the Department of Labor which defines when attendance at lectures, meetings, and training programs are considered "involuntary."  *See also* 29 C.F.R. §§ 785.27-32.

inconsistencies in their recitation of events).  He also attached an exhibit to his own response, which contained communications and other relevant evidence in support of his claim.  *See* doc. 32-1 at 1-13.  These exhibits were not attached to his original Complaint.  *See* doc. 1.  On June 14, 2022, Defendants filed a Reply to Plaintiff's Response, doc. 34, to which Plaintiff responded three days later.  Doc. 35.  Again, Plaintiff attached exhibits which specifically purport to contradict issues of fact presented by the Defendants.  Doc. 35 at 7-13.  The Court thus finds it impossible to examine Plaintiff's arguments without considering matters outside the pleadings.

Pursuant to this conclusion, the undersigned issued an Order on November 1, 2022, doc. 36, notifying the parties that the Court would not exclude their affidavits and supporting evidence in making a recommendation to the District Judge regarding the case, as required in this Circuit.  *See Griffith v. Wainwright,* 772 F.2d 822, 825 (11th Cir. 1985); *see also United States v. One Colt Python .357 Cal. Revolver, S/N T03461 W/Holster*, 845 F.2d 287, 289 (11th Cir. 1988) (requiring the District Court give the parties ten days' notice that it is converting the moving party's motion to dismiss into a motion for summary judgment).

Even after being given notice, the Plaintiff has not objected the Motion being construed as a Motion for Summary Judgment.  Rather, Plaintiff continues to rely on evidence outside of his original pleadings.  He filed a Response to the Court's Notice reiterating his contentions that the Defendants engaged in unlawful practices.  He also submitted another affidavit stating that he has been truthful in his filings.  Doc. 38.  He did not file a responsive statement of material facts.

As the notice required by Rules 12(b) and 56 has been given, the court now considers the motion for summary judgment and any materials in support of or in opposition to the motion.  *Id.*; *Universal Life Church Monastery Storehouse Inc. v. Cauley*, 619 F. App'x 836, 838 (11th Cir. 2015) (holding that notice requirements were met where district court "clearly and plainly warned Cauley that he would have to submit affidavits or responsive evidentiary material to prevent the district court from accepting the Appellees' evidence as true and granting summary judgment in their favor without a trial.").

## II.   Legal Standard

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. *See Williamson Oil Co. v. Philip Morris USA*, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. *See id.* (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). If the moving party discharges this burden,

9

the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. *Anderson*, 477 U.S. at 257.

In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in the light most favorable to the nonmoving party. *Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County*, 630 F.3d 1346, 1353 (11th Cir. 2011) (*citing Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 616 (11th Cir. 2007)). However, "facts must be viewed in the light most favorable to the non-moving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting Fed. R. Civ. P. 56(c)). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* (emphasis and citations omitted).

## III.  Discussion

Even though Plaintiff has attempted to refute the Defendants' contentions by pointing out issues of fact, he has not directed the Court

10

to any genuine issue of *material* fact regarding Defendants' proposed legitimate, nondiscriminatory reasons for failing to hire him.  Moreover, his FLSA claim flatly fails under the plain language of the Portal-to-Portal Act.  Thus, a recommendation of dismissal is warranted.

A. Title VII Claims

Plaintiff's first several claims implicate Title VII of the Civil Rights Act.  Doc. 1 at 5-8.  Under Title VII, an employer may not "fail or refuse to hire . . . any individual . . . because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e–2(a)(1).  Similarly, an employer may not "limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."  *Id.* § 2000e–2(a)(2).   It provides that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice."  *Id.* § 2000e–2(m).  It also forbids an employer from retaliating against an employee because of the

employee's opposition to "any practice made an unlawful practice" by Title VII or the employee's participation in "an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). Finally, "[a] hostile work environment claim under Title VII is established upon proof that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002) (internal quotations and citation omitted). Such a claim is actionable even if the mistreatment does not rise to the level of a tangible employment action. *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 861 (11th Cir. 2020).

### i. *Discrimination*

There are two types of actionable discrimination under Title VII: disparate treatment and disparate impact. *Spivey v. Beverly Enters., Inc.,* 196 F.3d 1309, 1312 (11th Cir. 1999), *abrogated on other grounds by Young v. United Parcel Service*, 575 U.S. 206 (2015). Plaintiff titled his first claim for relief as a disparate *impact* claim under Title VII (*see* doc. 1 at 5), but the factual support used to argue this claim more

appropriately supports a disparate *treatment* claim.  *See E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1274 (11th Cir. 2000) (explaining that a disparate impact theory alleges that some *neutral* employment practice which, while non-discriminatory on its face, creates an adverse, disproportionate impact on a statutorily-protected group); *c.f.*, *Burke-Fowler v. Orange Cnty., Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006) (requiring plaintiffs in disparate treatment cases to show that the employer treated similarly situated employees outside of the protected class more favorably); *see also* doc. 32 at 3 (Plaintiff's provided list of comparators).  In any event, Plaintiff cannot prevail on a disparate impact claim because of his failure to show that any specific, facially neutral, employment practice caused any "disproportionate impact" outside of his own personal situation, which he clearly believes was individually targeted.  *See Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 994 (1988); *Pouyeh v. Bascom Palmer Eye Inst.*, 613 F. App'x 802, 810 (11th Cir. 2015).

As to Plaintiff's disparate treatment allegations, a potential employee may prove a prospective employer discriminated against him through direct or circumstantial evidence.  *E.E.O.C. v. Joe's Stone Crabs,*

13

*Inc.*, 296 F.3d 1265, 1272 (11th Cir. 2002).   "Direct evidence of discrimination is evidence, that, if believed, proves the existence of a fact in issue without inference or presumption."   *Id.* (internal quotation marks and alterations omitted).   "[O]nly the most blatant remarks, whose intent could be nothing other than to discriminate . . . constitute direct evidence of discrimination."  *Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir. 1989); *see also Merritt v. Dillard Paper Co.,* 120 F.3d 1181, 1189-90 (11th Cir. 1997) (listing cases where courts have concluded that remarks and actions constitute direct evidence of illegal discrimination). Plaintiff references the direct evidence standard in his Response, *see* doc. 32 at 5, and passingly references how he is generally called "Mexican," doc. 32 at 3, but he has not come forward with any factual allegation meeting the direct evidence burden, such as remarks or comments from a decisionmaker (or anyone else at APLM) indicating any bias. *Haynes v. W.C. Caye & Co.*, 52 F.3d 928, 931 (11th Cir. 1995) (describing a decisionmaker's discriminatory comments  as direct evidence).

Because   Plaintiff   has   not   provided   direct   evidence   of discrimination,  he  must  provide  enough  factual  matter  to  suggest intentional discrimination by use of circumstantial evidence. *Surtain v.*

*Hamlin Terrace Foundation*, 789 F.3d 1239, 1245-46 (11th Cir. 2015). Where a plaintiff seeks to prove his claims with circumstantial evidence, "[i]n a traditional failure-to-hire case," he establishes a prima facie case of disparate treatment by showing that: "(1) [he] was a member of a protected class; (2) [he] applied and was qualified for a position for which the employer was accepting applications; (3) despite [his] qualifications, [he] was not hired; and (4) the position remained open or was filled by another person outside of [his] protected class." *Joe's Stone Crabs, Inc.*, 296 F.3d at 1273 (citing *Schoenfield v. Babbitt*, 168 F.3d 1257, 1267 (1999)).

Plaintiff is a Hispanic man who, in February 2021,[3] sought employment with APLM but was not hired. Thus, he has established that he is a member of a protected class, whether that be his race, color, or national origin, and that he encountered an adverse employment action. 42 U.S.C. § 2000e–2(a)(2). Moreover, the Court will assume for the purposes of summary judgment that the Defendants either filled the position at APLM or continued to seek another worker. However, though

---

[3] Plaintiff foregoes any argument that he sought employment with APLM in August 2020. His own allegation is that he declined the 2020 referral from his Union.

15

Plaintiff is likely qualified for the position in the sense that he is an experienced "journeyman iron worker," doc. 1 at 2, he refused to take a course specifically required to work on the premises, and therefore his qualifications for this particular job are questionable.   Plaintiff's justifications for his failure to take safety training do not negate the third-party qualification requirements. *Jones v. Bessemer Bd. of Educ.*, 570 F. Supp. 3d 1099, 1107 (N.D. Ala. 2021) (although plaintiff argued employer agreed to make exception, plaintiff failed to obtain certificate required for position and thus was unqualified); *Bond v. Georgia Power Co.*, 2018 WL 2422319, at *5 (M.D. Ga. May 29, 2018) (holding that plaintiff failed to show prima facie case of discrimination where plaintiff did not hold proper driver's license and therefore was not hired by Georgia Power due to policy requiring commercial license in order to receive training).

Plaintiff hinges his argument on the last factor, the fact that the position was either filled by those outside of his protected class or left open.   In support of this, Plaintiff presented a list of names of union members who were referred to APLM, arguing that he was the only one on the list with a Hispanic name. *See* doc. 32 at 3.  However, he failed to

16

allege that the individuals on the list were similarly situated.  "[A] Title VII plaintiff proceeding under *McDonnell Douglas* must prove, as a preliminary matter, not only that she is a member of a protected class, that she suffered an adverse employment action, and that she was qualified for the job in question, but also that she was treated less favorably than "similarly situated" individuals outside her class." *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1224 (11th Cir. 2019). Here, Plaintiff does not allege that even though the others also refused to take the training or failed to communicate their refusal of the job offer, they were given another chance anyway.  In other words, although comparators exist, they are not "similarly situated in all *material respects*." *Id.* at 1218 (emphasis added).  On the other hand, Defendants clearly established that Plaintiff did not train, and Plaintiff does not dispute this.

Next, Plaintiff claims that he was, on other occasions, paid for safety training, suggesting some sort of exception was possible but not provided to him because of his protected class.  Doc. 1 at 9.  Even assuming the Sugar Refinery deviated from its policy by permitting some

17

workers to skip training,[4] or even assuming that APLM sometimes paid for such training, this hypothetical deviation does not raise an inference of discrimination because Plaintiff does not tie this deviation to any comparators outside of his class or even explicitly say that the failure to deviate on this occasion was due to his class.  In fact, he states that he was excepted from the policy before.  *Rojas v. Florida*, 285 F.3d 1339, 1344, 1344 n. 4 (11th Cir. 2002) (citing *Brown v. American Honda Motor Co.,* 939 F.2d 946, 952 (11th Cir. 1991) ("It is difficult to hold that a practice which affects . . . all races in the same manner is actually designed to conceal a racially discriminatory motive.")).  Standing alone, absent a nexus between the deviation and the employee's protected status, deviation from a company policy does not demonstrate discriminatory animus. *Mitchell v. USBI Co.*, 186 F.3d 1352, 1355 (11th Cir. 1999).

Accordingly, Plaintiff has failed to make a prima facie case of disparate treatment discrimination.    *Lewis*, 918 F.3d at 1222

---

[4] Townsend's affidavit indicates that the Savannah Sugar Refinery is "now" owned by the Lewis Dreyfus Company, suggesting that the training policy may be new.  Doc. 26-1 at 3.  However, the record does not explicitly reflect when the policy was initiated and thus this statement does not conclusively explain why the training may have been omitted in the past.

("[E]stablishing a *prima facie* case of discrimination entitles the plaintiff to judgment—to victory—if the employer either can't, won't, or doesn't provide a nondiscriminatory explanation for its actions.") (citing *Texas Dep't of Comty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)).

Even if Plaintiff had established a prima facie case, his claim would still fail, as he cannot overcome the Defendants' legitimate reasons for not hiring him: his lack of safety training as well as his prior failure to show or communicate that he declined the first job. "[T]o avoid summary judgment [the plaintiff] must introduce significantly probative evidence showing that the asserted reason is merely a pretext for discrimination." *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1228 (11th Cir. 1993) (citation omitted). A reason is not pretext for discrimination "unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993).

Plaintiff's pretext argument is that the Defendants produced inconsistent affidavits. Doc. 32 at 2. He points out that although Townsend stated he "immediately" notified Local 709 to refuse Plaintiff, in reality, Townsend waited until the next day. Doc. 32 at 2. He refutes Townsend and Litchfield's statement that she did not send a February

19

2021 referral by providing the Court a copy of that referral.  *See* doc. 32-1 at 2 & 4.  Next, he alleges that APLM knew he declined the 2020 referral, even though he also alleges he saw no reason to tell them he declined it even after he was registered for the training course.  Doc. 35 at 2.  He attached a letter from Sample, who stated in the letter that Plaintiff accepted the August 2020 job.  Doc. 35 at 7.  Plaintiff compares this with Sample's affidavit where Sample also stated that Plaintiff did not raise the issue of compensation to him.  Doc. 35 at 7,10.  However, these two pieces of evidence, as in the other "inconsistencies," are not incongruent in any dispositive way.

Indeed, a discrepancy in the record exists regarding the meaning of being "referred" by a union in the employment context.  In other words, it is unclear whether the August 2020 events constituted a job offer and acceptance, followed by Plaintiff's no-show on his first day, or whether Plaintiff declined the offer, constituting no employee relationship at all and no resultant "first day."  However, the issue is nothing more than an irrelevant misunderstanding which does not constitute discrimination.  "Federal courts do not sit as a super-personnel department that reexamines an entity's business decisions."  *Elrod v. Sears, Roebuck &*

*Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991).   The inquiry is limited to "whether the employer gave an honest explanation of its behavior."   *Id.*; *see also Tolley v. United Parcel Serv.*, 2006 WL 486523, at *5 (N.D. Ga. Feb.27, 2006) ("Pretext means more than a mistake on the part of the employer; pretext means a lie, specifically a phony reason for some action.").

To that end, the Court finds the following hypothetical, discussed by the *en banc* Eleventh Circuit in *Combs v. Plantation Patterns*, instructive.  106 F.3d 1519, 1534 (11th Cir. 1997).   The court considered a prior opinion's hypothetical scenario where an employer responds to a plaintiff's *prima facie* case with an explanation containing minor factual inconsistencies—specifically a discrepancy between how many times an employee was late.   *Id.* (discussing *Isenbergh v. Knight–Ridder Newspaper Sales, Inc.*, 97 F.3d 436, 442-43 (11th Cir. 1996)).   The court explained that, in such a scenario, if the nondiscriminatory reason proffered by the employer is "lateness," the minor conflict between the precise number of times and the alleged number does not alter the fact that the employee was late an excessive number of times.   *Id.*   In other words, the defendant's broader reason for its action remains unrebutted.

According to *Combs*, the employer would be entitled to judgment as a matter of law, even given this inconsistency. *Id.* at 1534-35, 1535 n. 9 (citing *St. Mary's Honor Center*, 509 U.S. 502) (discussing plaintiff's burden of discrediting the defendant's explanations)).  Similarly, the inconsistencies to which Plaintiff pointed are immaterial.

Moreover, whether or not Plaintiff was referred and therefore *ethically* required to communicate his reluctance to take the course and attend his first day in order to maintain a future opportunity there is inconsequential.  "[A] plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason, at least not where, as here, the reason is one that might motivate a reasonable employer." *Combs*, 106 F.3d at 1543. "We are not in the business of adjudging whether employment decisions are prudent or fair." *Damon v. Fleming Supermarkets of Fla., Inc.,* 196 F.3d 1354, 1361 (11th Cir. 1999).  Whether a business decision is wise or nice or accurate—is precluded, because  "federal courts do not sit to second-guess the business judgment of employers." *Combs*, 106 F.3d at 1543; *see Rojas*, 285 F.3d at 1342.

"Discrimination is about actual knowledge, and real intent, not constructive knowledge and assumed intent.  [Cit.]  When evaluating a charge of employment discrimination, then, we must focus on the actual knowledge and actions of the decision-maker."  *Walker v. Prudential Prop. & Cas. Ins. Co.*, 286 F.3d 1270, 1274 (11th Cir. 2002) (internal quotations and citations omitted).  Plaintiff's discrimination case relies on assumed intent and constructive knowledge alone and therefore fails.  Plaintiff does not dispute that he failed to communicate with APLM that he refused the referral and training.  Moreover, although he clearly complained to his Union, Plaintiff has made no argument even suggesting that he or anyone else told APLM of his frustration with not being paid for training.  Instead of rebutting the reason for termination, Plaintiff makes only conclusory allegations and finds minor inconsistencies in the Defendants' affidavits which do not call into question the reason he was not hired, such as how long it took someone to send an email.  Doc. 32 at 2.  Thus, he has not "cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered "'legitimate reasons were not what actually motivated its conduct."'

*Combs*, 106 F.3d at 1538 (quoting *Cooper–Houston v. Southern Ry. Co.*, 37 F.3d 603, 605 (11th Cir. 1994)).

   *ii.*   *Retaliation*

To establish a prima facie claim of retaliation under Section 704(a), a plaintiff must satisfy the three-part test articulated by the Eleventh Circuit in *Jordan v. Wilson*, namely: (1) that his activity falls within the scope of protection of Title VII; (2) that he suffered an adverse employment decision; and (3) that a causal link exists between the protected activity and the detrimental employment action.   851 F.2d 1290, 1292 (11th Cir. 1988).

The Court infers that Plaintiff considers his protests about the training to be protected activity.   However, complaints of unpaid training bear no relationship to discrimination in this situation.   Thus, Plaintiff has not alleged that he engaged in *statutorily* protected activity, as required to allege a Title VII retaliation claim.   *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 959 (11th Cir. 1997); *see also* 42 U.S.C. §§ 2000e-3 (retaliation), 2000e-2 (defining unlawful employment practices for which protected activities apply).   "Even if the court were to assume that Defendant retaliated against Plaintiff on this basis, this

24

conduct would not be prohibited by Title VII." *Ellison v. City of Birmingham*, 180 F. Supp. 3d 1028, 1034 (N.D. Ala. 2016) (citing *Cooley v. Great S. Wood Preserving, Inc.,* 2004 WL 5570664 at *9 (M.D. Ala. Sept. 30, 2004).

Next, "[t]o establish a causal connection, a plaintiff must show that the relevant decisionmaker was 'aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated.'" *Kidd v. Mando American Corp*, 731 F.3d 1196, 1211 (11th Cir. 2013) (quoting *Shannon v. Bellsouth Telecommunications*, Inc., 292 F.3d 712, 716 (11th Cir. 2002)). As discussed above, even though Plaintiff vehemently argues that union members were aware of his complaints, he has not argued that anyone at APLM—the decisionmakers—knew of his complaints.

Finally, Plaintiff cannot show ultimate causation in his retaliation claim. "To establish the necessary causation [at the pretext stage], a plaintiff must demonstrate that her protected activity was a but-for cause of the alleged adverse action by the employer. *See Gogel v. Kia Motors Mfg. of Georgia, Inc.*, 967 F.3d 1121, 1135 (11th Cir. 2020). That is, Plaintiff must show that, based on the evidence, one could reasonably

infer that *but for* his protected conduct the employer would not have taken the alleged adverse action. *Tolar v. Bradley Arant Boult Commings, LLP*, 997 F.3d 1280, 1294 (11th Cir. 2021). Here, even if Plaintiff's complaints were statutorily protected, and even if APLM had knowledge of them, his case would still fail because he has not come forward with any evidence of but-for causation. The record clearly reflects his own failure to complete required training.

### iii. *Hostile Work Environment*

To establish that a workplace constitutes a "hostile work environment," a plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Rojas*, 285 F.3d at 1344 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993)) (quotation marks omitted). Plaintiff does not allege that he experienced the employee environment of APLM, much less that he faced the kind of hostility which the statute contemplates. *See Stewart v. Jones Util. & Contracting Co. Inc.*, 806 F. App'x 738, 742 (11th Cir. 2020) (hostile work environment claim ended when there was no longer a "work" environment). For

26

example, Plaintiff's passing claim that Hispanics are often collectively referenced as "Mexicans" does not substantiate a hostile work environment claim. The Supreme Court has instructed that Title VII is only implicated in the case of a workplace that is "permeated with discriminatory intimidation, ridicule and insult," not where there is the "mere utterance of an . . . epithet." *Harris,* 510 U.S. at 21 (citation omitted). Thus, even if this utterance regarding Mexicans occurred in the workplace—and it is not alleged that it was—it alone would not substantiate a hostile work environment claim.

### B. FLSA Claim

Plaintiff's FLSA claim is similarly disjointed. He appears to allege that the Defendants violated the FLSA by denying his employment because he protested unpaid training, but he also readily admits he refused employment in 2020 and he does not claim he is owed wages for training completed in 2021. Doc. 1 at 8-9. Accordingly, he seems to groundlessly proclaim uncompensated training to be unlawful, even though he clearly was not damaged by this policy because he refused it.

Defendants' Motion argues that the fact that Plaintiff was not an employee alone bars him from recovery. Doc. 28 at 19-20. Indeed, to

receive minimum wage and overtime payments under the FLSA, Plaintiff must show that he is an employee within the meaning of the statute. 29 U.S.C. §§ 206(a), 207(a)(1). Unfortunately, the FLSA does not provide much guidance on who exactly is an "employee," defining the term as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). And while it does appear that Plaintiff did not consider himself to be an employee of APLM, his briefing is underdeveloped. Given the vagueness in the record regarding the referral system and the resultant complication regarding Plaintiff's status as an employee at the time of the August 2020 referral, the Court must delve a little deeper to determine this case on summary judgment. Yet, even if Plaintiff was covered as an "employee" under the FLSA, his claim would fail.

The FLSA (29 U.S.C. §§ 201- 216, 217-219, 557) requires payment of a minimum wage and overtime pay for "hours worked." 29 U.S.C. §§ 206 & 207. However, the FLSA does not specify what activities constitute work. *See Tenn. Coal, Iron, & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597 (1944). The Supreme Court has concluded that the FLSA's references to "work" and "employment" should be interpreted "as those words are commonly used – as meaning physical or mental

exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Id.* at 598; *see also Dade County, Fla. v. Alvarez*, 124 F.3d 1380, 1384 (11th Cir. 1997). There has been much debate surrounding what constitutes compensable "work." *McKay v. Miami-Dade Cnty.*, 36 F.4th 1128, 1132 (11th Cir. 2022) (describing the FLSA definitions as "frustratingly circular"). As relevant here, Congress passed the Portal-to-Portal Act ("the Act") in 1947 in response to the Supreme Court's decision in *Anderson v. Mt. Clemens Pottery*, 328 U.S. 680 (1946), which held that the FLSA considered all time employees spent on an employer's premises to be "work" for which compensation was required. 29 U.S.C § 254; *see also IBP, Inc. v. Alvarez*, 546 U.S. 21, 26 (2005).

Under the Act superseding that holding, "activities which are preliminary to or postliminary to [an employee's] principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities" are not compensable. 29 U.S.C. § 254(a)(2). Additionally, the

Wage and Hour Administrator of the United States Department of Labor has issued regulations relevant to determining when time attending training programs must be counted as working time.[5]  Pursuant to these regulations, training programs need not be counted as working time if: (1) attendance is outside the employee's regular working hours; (2) the employee does not perform productive work during the program; (3) attendance is voluntary; and (4) the program is not directly related to the employee's job.  *See* 29 C.F.R. § 785.27; *see also Price v. Tampa Elec. Co.,* 806 F.2d 1551 (11th Cir. 1987) (applying § 785.27).   As further elucidation, the regulations provide that "[w]here a training course is instituted for the bona fide purpose of preparing for advancement through upgrading the employee to a higher skill and is not intended to make the employee more efficient in his present job, the training is not considered directly related to the employee's job even though the course incidentally improves his skill in doing his regular work." 29 C.F.R. § 785.29.

---

[5] "[T]he rulings, interpretations and opinions of the Administrator under this Act, while not controlling upon courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Skidmore v. Swift & Co.,* 323 U.S. 134, 140 (1944).

In this Circuit, to prove there has been some FLSA violation, Plaintiff must show that the training was either a primary activity or was a preliminary or postliminary activity which was so "integral and indispensable" to his primary duties as to be compensable. *See Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1344 (11th Cir. 2007) (citing *Dunlop v. City Elec., Inc.*, 527 F.2d 394, 398-400 (5th Cir. 1976)); *see also Steiner v. Mitchell*, 350 U.S. 247, 256. To determine whether such activities are integral and indispensable, the Eleventh Circuit considers the following factors: (1) whether the activity is required by the employer, (2) whether the activity is necessary for the employee to perform his or her duties, and (3) whether the activity primarily benefits the employer. *Bonilla*, 487 F.38 at 1344 (citing *Dunlop*, 527 F.2d at 401).

Even if an FLSA action exists when an individual refuses unpaid violative training, Plaintiff's claim fails. He was asked to complete preliminary training which was not directly related to his job, outside his regular working hours while not performing productive work. 29 C.F.R. § 785.27. Although he likely would object that the training was involuntary, this argument is logically inapposite because he refused it. Additionally, the training was not required by the employer, but rather

by the third-party owner of the premises.  And while the safety training may have incidentally improved Plaintiff's regular work skills as an ironworker, the training was merely adjacent to the potential ironworker job and was not intended to make him more efficient in the technical aspects of that prospective job.[6]  Nor did APLM benefit in any meaningful way from the training.  *Bonilla*, 487 F.3d at 1344 (Where the FAA required security screening, employer had no discretion as to whether its employees would be screened and therefore did not primarily—or even particularly—benefit from the security regime).  In other words, the preliminary training was neither so integral nor indispensable as to be compensable.  *IBP*, 546 U.S. at 40–41("[T]he fact that certain preshift activities are necessary for employees to engage in their principal activities does not mean that those preshift activities are 'integral and indispensable' to a 'principal activity' . . ."); *Steiner*, 350 U.S. at 256.

---

[6] Arguably, Plaintiff would have failed in his claim even prior to the Portal-to-Portal Act, *see Walling v. Portland Terminal Co.*, 330 U.S. 148 (1947), litigated before the Portal-to-Portal Act was enacted, wherein the Supreme Court held that railroad employers who furnished training to prospective yard brakemen were not required under the FLSA to compensate those trainees for time spent in the training program. Upon completion of the training applicants were certified as competent, and their names were included in a list from which the company could draw when their services were needed.  The Court held that the railroads receive no 'immediate advantage' from any work done by the trainees, and thus they are not employees within the Act's meaning.  *Id.* at 152.

Thus, even brushing aside the snags of Plaintiff's argument, such as whether the FLSA applies to him at all, Plaintiff simply cannot overcome the explicit exception contained in the Portal-to-Portal Act and his FLSA claim should be dismissed.

## IV.  Conclusion

For the reasons above, it is **RECOMMENDED** that Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment, Doc. 26,  be **GRANTED**  and that this action be summarily **DISMISSED**. This Report and Recommendation (R&R) is submitted to the district court judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.  Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties.   The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."   Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge.  The district  judge  will  review  the  magistrate  judge's  findings  and

recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to timely file objections will result in the waiver of rights on appeal.  11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO ORDERED and REPORTED and RECOMMENDED**, this 30th day of November, 2022.

CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA